CHAMPION'S AUTO FERRY, INC v PUBLIC SERVICE COMMISSION

Docket No. 201174. Submitted September 8, 1998, at Lansing. Decided October 2, 1998, at 9:00 A.M. Leave to appeal sought.

Harsens Island St. Clair Flats Association filed a complaint in the Public Service Commission against Champion's Auto Ferry, Inc., (CAF) and its president, David C. Bryson, seeking a refund of monies collected by CAF in excess of rates approved by the PSC for exclusive water-carrier service by CAF on the St. Clair River between Harsens Island and the city of Algonac near the border between the United States and Canada. Clay Township, in which the city of Algonac lies, filed a complaint in the Public Service Commission against CAF, seeking to have CAF required by the PSC to maintain its service and to provide at least twelve months' notice of intention to discontinue service.

Before the complaints were filed, CAF, following disapproval by the PSC of several requests for rate increases, had, for the same service, obtained from the Interstate Commerce Commission a certificate to operate interstate water-carrier service and charged ICC-approved rates that were higher than those approved by the PSC. Upon a petition by the PSC, Clay Township, and the association, the ICC had vacated the tariff it approved for CAF. The Surface Transportation Board (STB), which succeeded the ICC, had vacated the license granted to CAF by the ICC. CAF had announced an intent to wind down and eventually terminate its service.

Hearings regarding the complaints were consolidated before a hearing referee, whose proposal for decision was adopted by the PSC. The PSC ordered CAF to continue its service, provide twelve months' notice of intention to discontinue service, operate the service at certain times and frequency, maintain a fleet of at least three boats, and refund the overcharges that resulted from the ICC-approved rates by extending discounts on the PSC-approved rates. CAF appealed in the Court of Appeals.

The Court of Appeals *held*:

1. The PSC did not act unlawfully or unreasonably in denying a motion by CAF to disqualify the PSC commissioners on the asserted ground that they were biased against CAF because in proceedings before the ICC, the STB, and state and federal courts they had taken

positions adverse to CAF. The PSC decision in this case was as proposed by the hearing referee. There was no intolerable risk of actual bias by the hearing referee where no claim was made that the hearing referee had taken any prior position with regard to the issues presented. The mere fact that the hearing referee is a PSC employee and the PSC took positions adverse to CAF in other proceedings does not present a situation that violates due process. No claim was made that any member of the PSC had a personal and economic interest in any part of the controversy that would preclude an impartial decision. Even if bias could be shown, because the PSC has exclusive jurisdiction over the matter, the rule of necessity would require adjudication by the PSC of the questions presented in this case.

2. The PSC did not act unlawfully or unreasonably in ruling that Clay Township had standing to bring its complaint. MCL 460.204; MSA 22.94 allows any juridical entity, such as Clay Township, to file a complaint in the PSC regarding any rate, fare, charge, tariff, rule, regulation, or service of any water carrier within the state, and the statute requires the PSC to investigate such a complaint.

3. The PSC did not act unlawfully or unreasonably in finding that the CAF service involved intrastate commerce, not interstate commerce, and that the CAF operation did not fall within the jurisdiction of the STB. The service ran from one point in the state to another point in the state and by a route that did not enter the territorial waters of any neighboring state or Canada. Accordingly, the service involved intrastate commerce not subject to federal regulation.

4. The PSC did not act unlawfully or unreasonably in finding that its power to regulate CAF was not preempted by federal law. Assuming arguendo that Congress, in repealing the Interstate Commerce Commission Act, intended that carriers engaged in interstate commerce not then be subject to state regulation, CAF was not an interstate carrier over whom the state could not assert jurisdiction.

5. The PSC did not act unlawfully or unreasonably in prescribing CAF's hours of service, frequency of operation, and in otherwise micromanaging CAF's business. Such prescriptions were within the PSC's regulatory powers under MCL 460.204; MSA 22.94 and MCL 460.22(a); MSA 22.41(a).

6. The PSC did not act unlawfully or unreasonably in requiring CAF to provide twelve months' notice of any intention to discontinue service and in requiring CAF to remain in operation. The Thirteenth Amendment of the United States Constitution prohibits involuntary servitude by human beings, not corporations such as CAF. The PSC's regulatory authority over water carriers pursuant to MCL 460.204;

MSA 22.94 includes the power to require continued service and notice of intent to discontinue service. CAF has not shown a deprivation of property that would violate the Fifth Amendment of the United States Constitution. If and when it does so, it may sue in the Court of Claims for compensation.

7. The PSC did not act unlawfully or unreasonably in concluding that Clay Township's complaint was ripe for review by the PSC. The issue of continuation of CAF service was ripe for review in light of CAF's announced intent to discontinue service.

8. CAF's claims that the PSC decision violates equal protection and deprived CAF a protected property right without the due process required by the federal and state constitutions are without merit. Even if CAF is the only intrastate water carrier whose rates and regulations were subjected to scrutiny by the PSC, the PSC had a rational basis for regulating CAF because it was the only carrier not subject to competition. The water carrier act, MCL 460.201 *et seq.*; MSA 22.91 *et seq.*, pursuant to which the complaint against CAF was heard in the PSC, provides reasonable standards and requires notice and an opportunity to be heard and therefore does not violate due process.

Affirmed.

1. ADMINISTRATIVE LAW — PUBLIC SERVICE COMMISSION DECISIONS — APPEAL.

A party aggrieved by a decision of the Public Service Commission must, on appeal, show by clear and satisfactory evidence that the decision is unlawful or unreasonable; a decision is unlawful when it involves an erroneous interpretation or application of the law; a decision is unreasonable when it is unsupported by the evidence (MCL 460.205, 462.26[8]; MSA 22.95, 22.45[8]).

2. CARRIERS — WATER CARRIERS — PUBLIC SERVICE COMMISSION — COMPLAINTS.

A juridical entity may file a complaint with the Public Service Commission regarding any rate, fare, charge, tariff, rule, regulation, or service of a water carrier within the state; the commission must investigate the complaint and provide the carrier with notice and an opportunity to be heard (MCL 460.204; MSA 22.94).

3. CARRIERS — WATER CARRIERS — PUBLIC SERVICE COMMISSION.

The statutory regulatory powers of the Public Service Commission over intrastate water carriers includes the power to prescribe hours of service and frequency of operation (MCL 460.22(a), 460.53, 460.204; MSA 22.41[a], 22.3, 22.94).

4. CARRIERS — WATER CARRIER ACT — PUBLIC SERVICE COMMISSION — CONSTITUTIONAL LAW — DUE PROCESS.

The water carrier act sets forth reasonably precise standards for regulation of intrastate water carriers by the Public Service Commission and requires the provision of notice and hearing to water carriers such that it complies with due process as required by the federal and state constitutions (MCL 460.201 *et seq.*; MSA 22.91 *et seq.*).

*Haliw, Siciliano and Mychalowych* (by *Andrew J. Haliw, III, Joseph A. Siciliano,* and *Nanette L. Korpi*), for Champion's Auto Ferry, Inc.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Don L. Keskey* and *David M. Gadaleto,* for Public Service Commission.

*McIntosh, McColl, Carson, McNamee, Strickler & Rickler* (by *John B. McNamee*), for Clay Township.

Before: JANSEN, P.J., and NEFF and O'CONNELL, JJ.

PER CURIAM. Appellant Champion's Auto Ferry, Inc., (CAF) appeals as of right, MCL 462.26(1); MSA 22.45(1), from a January 15, 1997, opinion and order of the Public Service Commission (PSC) in Case No. T-1289, a decision made by the PSC under the water carrier act, MCL 460.201 *et seq.*; MSA 22.91 *et seq.* Initially, the claim of appeal also encompassed the PSC's contemporaneous ruling in Case No. T-1288, but that case has been settled, and that aspect of the appeal has been dismissed by stipulation of the parties effectuated by this Court's unpublished order of May 9, 1997. We affirm.

CAF operates boats that transport passengers, freight, and vehicles between the city of Algonac and Harsens Island. Algonac is located in St. Clair County, in Clay Township, and is bordered on the east and south by the St. Clair River, the middle of which constitutes the boundary between the United States and

Canada. At the southerly portion of the city of Algonac, the river is divided into two channels by virtue of the existence of Harsens Island. The international border continues down the center of the south channel, which flows east and south of Harsens Island, while the north channel, which runs between Harsens Island and a portion of the St. Clair County mainland, is wholly within the United States. Both termini between which CAF boats operate are within the north channel of the St. Clair River. The length of the trip is approximately one-half mile.

At the outset, it should be noted that CAF contends, notwithstanding its voluntary adoption of nomenclature suggesting that it is a "ferry" service, that it is a "water carrier" and that it does not operate a "ferry service." The map reflects that CAF's dock in Algonac abuts state highway M-29; its Harsens Island dock abuts state highway M-154. In a strictly technical sense, a "ferry" is a continuation of the highway from one side of the water over which it passes to the other and is for transportation of passengers or travelers with their vehicles and such property as they may carry or have with them. *St Clair Co v Interstate Sand & Car Transfer Co*, 192 US 454, 466; 24 S Ct 300; 48 L Ed 518 (1904). CAF's operation certainly seems to fit this definition, but the statute simply subjects to regulation by the PSC "any and all persons, firms and corporations engaged in the transportation of freight, passengers, or express, by water, wholly within this state." MCL 460.201; MSA 22.91. The statute thus elides any distinction between "ferries" and other forms of water transportation for regulatory purposes. Accordingly, the remainder of this opinion will refer to the service operated by CAF as a "ferry,"

although with no intent to prejudge any of the substantive issues raised.

CAF has operated this service since 1937. For the more than one thousand permanent residents of Harsens Island, as well as numerous cottage owners and other visitors, CAF's ferry service is the main link between Harsens Island and the mainland. There are no bridges or competing commercial ferries.

As this Court recited in a December 20, 1996, unpublished opinion addressing a PSC rate order governing CAF's operations, *Champion's Auto Ferry, Inc v Public Service Comm*, unpublished opinion per curiam of the Court of Appeals, issued December 20, 1996 (Docket Nos. 185048, 187124), from at least 1966 onward, CAF voluntarily submitted its operations to regulation by the PSC. In 1992, however, after David C. Bryson, whose grandfather founded CAF, acquired sole ownership of the stock of the company, creating debt on the books of the company by way of payment for the interests purchased, and without expending his own funds, immediately began a campaign to raise rates for the service provided. Several rate increases were allowed by the PSC, but others were rejected. When CAF appealed the PSC's rejection of rate increase requests in the prior appeal, this Court affirmed, finding that the rates established were reasonable rather than confiscatory, that the PSC had properly viewed CAF's operations with respect to their economic effect over a calendar year, rather than adjusting the rates on a seasonal basis, and further held that the PSC had not improperly interfered with management decisions in refusing to recognize the acquisition debt that Bryson had engendered, or a twenty-four percent sal-

ary increase Bryson gave himself, in setting rates and charges. *Id.*

Shortly after that decision, on January 6, 1997, CAF announced in a letter to the PSC's Director of Motor Carrier Regulation that, because of its inability to obtain what it deemed reasonable rate relief, it planned to suspend operations in stages. CAF announced its intent, beginning January 15, 1997, at 6:00 A.M., to discontinue the sale of twenty-trip commuter discount ticket books. It proposed to suspend, commencing February 3, 1997, night ferry service between 10:00 P.M. and 6:00 A.M., then afternoon ferry service starting February 10, 1997, except for one afternoon trip to provide service for the school bus, and then on February 16, 1997, at 2:00 P.M., to terminate all ferry service between Algonac and Harsens Island.

That announcement, however, was rendered nugatory by the PSC's decision in the present case, T-1289, because by that decision CAF is required to give twelve months' notice of its intent to discontinue all or any part of its operations. Moreover, the PSC's decision requires CAF to provide service on a continuous basis from 6:00 A.M. to 8:30 A.M. and 4:30 to 6:30 P.M., quarter hourly service from 8:30 A.M. to 4:30 P.M. and 6:30 P.M. to 12:00 A.M., and not less than twice hourly service from 12:00 A.M. to 6:00 A.M. during winter hours, and continuous service from 6:00 A.M. to 12:00 A.M., and not less than thrice hourly service from 12:00 A.M. to 6:00 A.M. during summer hours, except where, through no fault of its own, CAF is unable to meet that schedule. The order further requires that, to meet those service requirements, CAF maintain a fleet of at least three boats exclusively devoted to the Algonac-

Harsens Island run. The PSC's order further mandates that CAF refund excess charges illegally collected, in violation of its then-existing PSC tariffs, by discounting various charges until an amount equal to the over-charge is expended by undercharges. This method involves slight adjustments to the tariffs and reflects the PSC's ancillary renunciation of any intent to seek criminal prosecution under MCL 460.206; MSA 22.96.

The overcharges resulted when, in 1995, CAF petitioned the Interstate Commerce Commission (ICC), which was subsequently abolished pursuant to the ICC Termination Act of 1995, PL 104-88, 109 Stat 803, for a certificate to operate interstate water-carrier service between Algonac and Harsens Island. Such a certificate was granted by the ICC. However, on subsequent petition by the PSC, Clay Township, and a Harsens Island homeowners' association, the ICC vacated the tariff previously approved and held that it was without jurisdiction to regulate CAF's service, which to the ICC appeared to be involved exclusively in intrastate commerce, and also that it independently lacked jurisdiction because CAF was operating a ferry service, which was outside the jurisdiction, as a general proposition, of the ICC. *Viking Starship, Inc, & Common Carrier Application*, 4 ICC2d 634, 636 (1988), aff'd *Cross-Sound Ferry Services, Inc v ICC*, 290 US App DC 39; 934 F2d 327 (1991); *Champion's Auto Ferry, Inc* (ICC No. WC 1548, decision of December 27, 1995). Subsequently, the Surface Transportation Board (STB) vacated any license that CAF had acquired from the ICC and discontinued CAF's effort to acquire such federal authority, ruling that the ICC Termination Act had abolished any federal regulatory function

applicable to CAF. The STB noted that, in issuing a license and approving CAF's proposed tariffs,

> [t]he ICC did not make a determination that CAF was actually performing interstate operations. If, as Michigan contends, CAF is not carrying traffic as a common carrier in interstate commerce, then CAF would not be protected by an interstate license, even if such a license were effective. Thus, . . . even if the license were still in force, and the prior regulatory regime were still in place, any of CAF's activities that did not constitute transportation in interstate commerce would be outside the scope of the license and hence not protected by it. [*Champion's Auto Ferry, Inc* (STB No. WC 1548 [sub-No. 1C], decision issued February 22, 1996).]

It is on the basis of those federal administrative rulings that the PSC in this case concluded that, during the brief time frame when CAF was imposing charges pursuant to the now vacated federal tariffs, which were higher than the PSC-approved tariffs, CAF was illegally overcharging for its services and thus must provide refunds.

CAF presents eleven issues for our determination. All the issues were duly argued before both the administrative hearing officer and the PSC. The standard of review requires that a party aggrieved by a decision of the PSC show by clear and satisfactory evidence that the PSC's decision is unlawful or unreasonable. MCL 460.205; MSA 22.95, MCL 462.26(8); MSA 22.45(8). A decision is unlawful when it involves an erroneous interpretation or application of the law. *Attorney General v Public Service Comm*, 215 Mich App 356, 364; 546 NW2d 266 (1996). A decision is unreasonable when it is unsupported by the evidence. *Id.* The courts must give due deference to the PSC's administrative expertise and legislative discretion,

and may not substitute their judgment for that of the PSC; similarly, the courts should give great weight to any reasonable construction of a regulatory scheme that the PSC is empowered to administer. *Id.*

I. WHETHER THE PSC ACTED UNLAWFULLY AND UNREASONABLY IN DENYING CAF'S MOTION TO DISQUALIFY THE COMMISSIONERS OF THE PSC OR IN THE ALTERNATIVE TO STAY THE PROCEEDINGS?

The PSC appeared as a party adverse to CAF in proceedings before the ICC, the STB, the circuit court, and the federal court. CAF contends that the positions asserted by the PSC in those administrative and judicial proceedings reflected a prejudgment of issues the PSC was called on to adjudicate in the present case, particularly issues of jurisdiction.

As indicated, evidentiary hearings in this case and initial findings of fact and conclusions of law were conducted or made by an independent hearing officer, not by the PSC, which simply was called upon to review the hearing officer's proposal for decision, MCL 24.281; MSA 3.560(181), which it ultimately adopted. There is no intolerable risk of actual bias by a decisionmaker where no claim is made that the particular hearing officer who presided had taken any position, public or private, on any of the issues presented, and the mere fact that the hearing officer may have been employed by the PSC, and that the PSC itself had institutionally taken such a position in federal administrative proceedings or state or federal litigation, does not reflect any situation violative of due process. *Tomlin v Dep't of Social Services*, 154 Mich App 675; 398 NW2d 490 (1986).

Nor is any claim made that any member of the PSC had some kind of personal interest in any part of this controversy, such that a determination one way or

the other would be of economic benefit to a member of the PSC or otherwise individually affect a member of the PSC in a cognizable manner different than the public generally. Cf. *Tumey v Ohio*, 273 US 510, 522-523; 47 S Ct 437; 71 L Ed 749 (1927). A member of a state agency is generally not disqualified as a deci-sionmaker merely because that member has taken a public position on an issue, absent a showing of inca-pability of judging that particular issue fairly. Where, as here, institutional involvement of the PSC in federal administrative or state or federal litigation concerning related issues had terminated some months before the PSC was called on to adjudicate Case No. T-1289, there is no basis for concluding that the members of the PSC were so immediately and personally "enmeshed" in any one of those issues as to preclude them from rendering an impartial administrative deci-sion. *Livonia v Dep't of Social Services*, 423 Mich 466, 510; 378 NW2d 402 (1985), citing *Johnson v Missis-sippi*, 403 US 212; 91 S Ct 1778; 29 L Ed 2d 423 (1971). The Supreme Court in *Livonia* went on to hold that an administrative adjudicator's mere famili-arity with the facts of a case obtained during the per-formance of a statutory duty does not disqualify the decisionmaker.

Assuming, however, that such involvement of the PSC, as an institution—notwithstanding that none of its members was named or appeared individually in those administrative or judicial proceedings—is none-theless sufficient to disqualify all the members of the PSC, then the rule of necessity comes into play. Aside from questions of the PSC's jurisdiction, which will be addressed later in this opinion, assuming proper juris-diction, that jurisdiction is generally exclusive; no

other agency, and no court, has been delegated by the Legislature the power delegated to the PSC to regulate water carriers. Accordingly, if the PSC's involvement in prior federal administrative and federal and state judicial proceedings requires recusal of all its individual members, or enough of them so as to prevent a quorum from assembling, the rule of necessity precludes recusing the members of the PSC if disqualification would then leave the PSC unable to adjudicate questions otherwise properly presented for its resolution. *United States v Will*, 449 US 200, 213 ff; 101 S Ct 471; 66 L Ed 2d 392 (1980); *Bliss v Caille Bros Co*, 149 Mich 601; 113 NW 317 (1907).

Here, because the PSC simply adopted the factfindings and legal conclusions of the independent hearing officer, who is not alleged to be disqualified for any reason, this Court need not even contemplate whether, to the extent its review is deferential rather than de novo, some form of heightened appellate scrutiny might be warranted. Unless the hearing officer's decision is substantively erroneous, the possible disqualification of the PSC becomes irrelevant. *People v Gorka*, 381 Mich 515, 520, n 2; 164 NW2d 30 (1969).

II. WHETHER THE PSC ACTED UNLAWFULLY AND UNREASONABLY IN RULING THAT CLAY TOWNSHIP HAD STANDING TO BRING ITS COMPLAINT?

CAF next argues that, pursuant to MCL 460.204; MSA 22.94, only the PSC may institute a formal complaint.

MCL 460.204; MSA 22.94 provides in relevant part:

Whenever any complaint shall be made to said Michigan public utilities commission by any person, firm, or corpora-

> tion against any rate, fare, charge, or tariff of any carrier by water within this state, or against any rule, regulation, or service of such carrier, or against the neglect, failure, or refusal of any such carrier to make, observe or perform any rate, fare, charge, or tariff, or any rule, regulation, or service, said Michigan public utilities commission shall investigate the same, and it may regulate the performance or observance of any rate, fare, charge, or tariff, and any rule, regulation, or service, and may prescribe the same to be observed by such carrier: Provided, that such carrier shall in all cases be entitled to reasonable notice and an opportunity to be heard on such investigation before any rate, fare, charge, or tariff, or any rule, regulation, or service shall be prescribed, established, or imposed by said commission
> . . . .

By its terms, the statute allows any juridical entity, such as the township, to file a complaint with the PSC (as successor to the Public Utilities Commission), and it thereupon becomes the duty of the PSC to investigate. The statute does not prescribe how such investigation shall be conducted. Given this statutory phraseology, CAF's argument is without merit.

Indeed, under a statute couched in nearly identical terms, the Supreme Court rejected such an argument as overly technical and further ruled that from the mere fact that an administrative agency proceeded to address the substantive merits of any such complaint, it could simply be presumed that the agency had conducted the prerequisite investigation. Thus, absent some legal error or procedural impropriety prejudicially affecting the substantial rights of a party, any derelictions with respect to preliminary investigation would not provide a basis for appellate relief. *Bd of State Tax Comm'rs v Kohler*, 193 Mich 420, 425-428; 159 NW 785 (1916).

III. WHETHER THE PSC ACTED UNLAWFULLY AND UNREASONABLY IN FINDING THAT CAF'S OPERATIONS BETWEEN ALGONAC AND HARSENS ISLAND INVOLVES INTRASTATE AND NOT INTERSTATE COMMERCE AND THAT CAF'S OPERATIONS DO NOT FALL WITHIN THE JURISDICTION OF THE SURFACE TRANSPORTATION BOARD?

CAF contends that the operative fact is not that both Algonac and Harsens Island are located in Michigan, but that CAF operates a route over the St. Clair River, which forms part of the international boundary between the United States and Canada. CAF reasons that pursuant to US Const, art I, § 8, cl 3, Congress has exclusive control over transportation and shipping affecting international commerce.

In the case of ferries operating over boundary waters, it has always been recognized that transportation between two points in one state, in the absence of federal regulation, is subject to state regulation. *Wilmington Transportation Co v Railroad Comm of California*, 236 US 151; 35 S Ct 276; 59 L Ed 508 (1915).

At the outset, however, it should be recognized that it is irrelevant whether the service provided by CAF involves interstate or intrastate commerce, inasmuch as CAF, by virtue of the rulings of the ICC and the STB, is collaterally estopped from contending that Congress has legislated federal regulation of CAF's operations. Collateral estoppel applies to unappealed administrative determinations that are adjudicatory in nature and where, as with respect to the ICC and the STB, a method of appeal is provided. *Senior Accountants, Analysts & Appraisers Ass'n v Detroit*, 399 Mich 449, 457-458; 249 NW2d 121 (1976). Accordingly, given the ruling of both federal agencies that, following abolition of the ICC by the ICC Termination Act of 1995, state regulation of CAF's services, includ-

ing its tariffs, would be permissible, even if transportation was occurring between points in two different states. *Port Richmond & Bergen Point Ferry Co v Bd of Chosen Freeholders of the Co of Hudson*, 234 US 317; 34 S Ct 821; 58 L Ed 1330 (1914).

However, it is unnecessary to rely on the federal administrative determinations, because any commerce here involved is from one point in the state of Michigan to another, across a portion of the St. Clair River entirely within the boundaries of the United States, and by a route that does not enter the territorial waters of any neighboring state or foreign country. Accordingly, the commerce here involved is truly intrastate and outside the ambit of federal regulation as interstate commerce. Furthermore, because CAF is operating a ferry, irrespective of any involvement in interstate commerce, a ferry may be regulated in respect of the landing places. *St Clair Co, supra*, at 460.

Because CAF's route does not actually cross either a state boundary or an international boundary, it does not involve interstate commerce. Cf. *Central Greyhound Lines, Inc v Mealey*, 334 US 653; 68 S Ct 1260; 92 L Ed 1633 (1948) (state tax held to infringe interstate commerce where applied to portions of a bus route that, although beginning and ending in the same state, included substantial travel in other states). The right to establish and regulate ferries is part of that mass of legislation that embraces everything within the territory of a state not surrendered to the federal government. *Conway v Taylor*, 66 US 603; 17 L Ed 191 (1862). Accordingly, the PSC did not err in finding that regulation of CAF's Algonac-Harsens Island service is within its jurisdiction and is not preempted

either by existing federal interstate commerce regulations or by the "dormant" Commerce Clause, US Const, art I, § 8, cl 3.

IV. WHETHER THE PSC ACTED UNLAWFULLY AND UNREASONABLY IN FINDING THAT ITS POWER TO REGULATE CAF IS NOT PREEMPTED BY FEDERAL LAW, AND IN FURTHER DETERMINING THAT THE PSC IS AUTHORIZED TO REGULATE CAF'S RATES, FARES AND CHARGES PURSUANT TO THE WATER CARRIER ACT?

CAF asserts that PSC regulation of its service infringes the purpose and objective of Congress as reflected in the ICC Termination Act. CAF contends that, by abolishing the ICC, Congress intended that carriers engaged in interstate commerce not be subject to restrictions regarding the fares they can charge.

Granting arguendo that, in repealing the Interstate Commerce Commission Act and abolishing the ICC, Congress intended that carriers engaged in interstate commerce not be subject to regulation, leaving such matters to the marketplace, CAF is not engaged in interstate commerce, as already established, and therefore this issue is without merit.

V. WHETHER THE PSC ACTED UNLAWFULLY AND UNREASONABLY IN RULING THAT THE CAF SHOULD PROVIDE A LEVEL OF SERVICE AS RECOMMENDED BY CLAY TOWNSHIP AND AS MODIFIED BY THE PSC STAFF?

CAF argues that the PSC does not have the authority to actively manage a regulated enterprise. CAF contends that the PSC exceeded its statutory authority by defining CAF's hours of service, the frequency of operation, and otherwise micromanaging CAF's business.

By its terms, the controlling statute empowers the PSC to regulate service, MCL 460.204; MSA 22.94, and this power is buttressed or augmented by § 22 of the

Railroad Act, MCL 460.22(a);   MSA 22.41(a),   which similarly grants to the Railroad Commission complete power to regulate any practice of any person, firm, corporation, or association affecting the transportation of persons or property or any service in connection therewith. The PSC acquired all the powers of the Railroad Commission by virtue of MCL 460.53;   MSA 22.3.   This Court has held that § 22 of the Railroad Act broadly empowers the PSC to regulate rates and services of entities subject to its jurisdiction. *Chesapeake & Ohio R Co v Public Service Comm*, 59 Mich App 88, 94-97; 228 NW2d 843 (1975).

VI. WHETHER THE PSC ACTED UNLAWFULLY AND UNREASONABLY IN CONCLUDING THAT THE PSC MAY REQUIRE CAF TO PROVIDE A TWELVE-MONTH ADVANCE NOTICE OF ANY INTENTION TO CEASE SERVICE?

VII. WHETHER THE ACTIONS OF THE PSC REQUIRING CAF TO REMAIN IN OPERATION FOR TWELVE MONTHS AFTER DECIDING TO CEASE OPERATIONS WOULD VIOLATE THE THIRTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION?

VIII. WHETHER THE ACTIONS OF THE PSC REQUIRING CAF TO PROVIDE A TWELVE-MONTH NOTICE BEFORE TERMINATING SERVICE VIOLATES THE FIFTH AMENDMENT OF THE UNITED STATES CONSTITUTION?

It will be noted that CAF is a corporation. The simple answer to the first subquestion propounded, therefore, is that the Thirteenth Amendment  does not apply to corporations, but only to individuals. This has been the law since the decision in *Slaughterhouse Cases*, 83 US 36, 69; 21 L Ed 394 (1872)  the first high court case construing the Thirteenth Amendment, where the Supreme Court said:

> That personal servitude was meant, is proved by the use of the word 'involuntary,' which can only apply to human beings.

Thus, *Dawson v Jones*, 512 So 2d 311 (Fla App, 1987), on which CAF relies, is distinguishable, because there the mandatory injunction at issue was directed at a person, not a corporation.

With respect to the general principle that the PSC may regulate, but not manage, enterprises subject to its jurisdiction, requiring a regulated enterprise to provide a type or level of service does not involve management of the business, because the manner of providing the level of service is left to the corporation's officers and shareholders.

With respect to requiring twelve-month notice before terminating operations, there are two intertwined questions presented. First, there must be some statutory authority by which the PSC is empowered to require a regulated entity to continue operations; absent such authority, such enterprises are free to choose to discontinue operations in whole or in part. *Lucking v Detroit & Cleveland Navigation Co*, 265 US 346; 44 S Ct 504; 68 L Ed 1047 (1924). Because the water carrier act, MCL 460.204; MSA 22.94, gives the PSC plenary power to regulate service, and by necessary implication the power to regulate both commencement and termination of service, the PSC did not exceed its jurisdiction in requiring continuation of service until a twelve-month notice is provided. Even if the statute were ambiguous, the PSC's construction would be entitled to deference where not clearly at odds with the legislative intent. *Attorney General, supra* at 364.

The secondary question then becomes whether if, as CAF claims, its operations are unprofitable, a mandate that it continue operations violates the Fifth Amendment. More correctly, the argument should be

that such regulation violates the Fourteenth Amendment, which applies to the states, whereas the Fifth Amendment applies to the federal government, although the Fourteenth Amendment unquestionably incorporates the Fifth Amendment prohibition against taking property without just compensation for public use. *Dolan v Tigard*, 512 US 374, 383; 114 S Ct 2309; 129 L Ed 2d 304 (1994).

However, CAF has failed to establish that any such taking has occurred. When this Court considered the rates and tariffs authorized by the PSC in the prior unpublished opinion, it expressly found that CAF could operate both profitably and with a reasonable rate of return within that scheme of charges. CAF has expressly disavowed any subsequent effort to seek, by petition to the PSC, modification of those tariffs, so, on the basis of the preclusive principle of res judicata, this Court's prior unpublished determination, although not precedential, MCR 7.215(C)(1), requires a conclusion that no confiscation has occurred as a matter of law. *W H Atkinson Co v State Bd of Tax Administration*, 299 Mich 315; 300 NW 102 (1941).

If and when CAF can establish that its authorized rates are in fact confiscatory, it may sue in the Court of Claims for just compensation on a theory of constitutional tort. *Smith v Dep't of Public Health*, 428 Mich 540, 544; 410 NW2d 749 (1987), aff'd on other grounds sub nom *Will v Michigan Dep't of State Police*, 491 US 58; 109 S Ct 2304; 105 L Ed 2d 45 (1989); *Marlin v Detroit*, 205 Mich App 335, 338; 517 NW2d 305 (1994). The existence of such a remedy precludes a finding in this administrative review proceeding that the requirement of continuation of service for a minimum twelve-month time frame is itself

unconstitutional. *Regional Rail Reorganization Act Cases*, 419 US 102, 126-127; 95 S Ct 335; 42 L Ed 2d 320 (1974). The existence of such a judicial remedy for an otherwise uncompensated taking is as comprehensive as the constitution requires and avoids any necessity of declaring that a continuation of service requirement, should CAF be unable to operate profitably, constitutes an uncompensated taking. *Id.*

IX. WHETHER THE PSC ACTED UNLAWFULLY AND UNREASONABLY
IN CONCLUDING THAT THE TOWNSHIP'S COMPLAINT WAS RIPE FOR
REVIEW BY THE PSC?

CAF suggests that there is no present controversy between the parties because CAF is continuing its operations between Algonac and Harsens Island.

This argument rather disingenuously ignores the fact that the present state of affairs arises by virtue of the PSC's order requiring continuation of service, without which, so far as appears, CAF would have implemented its announced plan to terminate all operations by February 16, 1997. When the township initially filed its complaint, CAF had announced, by letter of April 6, 1996, its intention to discontinue its ferry service. CAF has been continuing that service only under protest of the circuit court restraining orders and eventually the decision of the PSC. The decision from which the appeal has been claimed came only approximately one week after CAF announced its intent to completely discontinue service (its April 6, 1996, declaration was conditional). Accordingly, the issue was ripe for determination.

X. WHETHER THE PSC'S DECISION IN THIS CASE VIOLATES EQUAL
PROTECTION PRINCIPLES?

XI. WHETHER THE PSC'S DECISION DEPRIVES CAF OF A PRO-
TECTED PROPERTY RIGHT WITHOUT DUE PROCESS IN VIOLATION
OF THE FEDERAL AND STATE CONSTITUTIONS?

These issues were previously raised by CAF and rejected in this Court's prior unpublished opinion. As already noted, while that decision is not precedential, it is res judicata with respect to CAF. *W H Atkinson Co v Brown, supra.* However, because this opinion is published and precedential, MCR 7.215(C)(2), we repeat here what we said previously on these points:

> Next, Champion argues that the actions of the PSC in regulating it violated Champion's right to equal protection. Champion contends that it is the only water carrier subject to regulation by the PSC even though other ferries operate in Michigan. Therefore, Champion argues that the PSC's scrutiny of its rates and regulations and lack of scrutiny of other ferries violates equal protection.
>
> The Equal Protection Clause of the Fourteenth Amendment directs that all persons similarly situated shall be treated alike. *El Souri v Dep't of Social Services*, 429 Mich 203, 207; 414 NW2d 679 (1987). However, the Equal Protection Clause does not require things which are different in fact or opinion to be treated in law as though they were the same. *Id.* Generally, legislation challenged on equal protection grounds is accorded a presumption of constitutionality and is reviewed applying a rational basis standard. *Doe v Dep't of Social Services*, 439 Mich 650, 662; 487 NW2d 166 (1992). Under the rational basis standard, a statute will not be struck down if the classification scheme is rationally related to a legitimate governmental purpose.
>
> Champion has not shown that the PSC's regulation and scrutiny of its rates violates its right to equal protection. The PSC has a rational basis for regulating Champion's rates and [services] because other carriers are subject to competition (unlike Champion) and most ferry services in the state are either publicly owned or under the jurisdiction of another government. Thus, there is no violation of equal protection.

Champion next argues that the failure of the Carriers by Water Act to set forth standards for the PSC's regulation of rates charged is unconstitutional as violative of due process.

The Carriers by Water Act satisfies due process because the PSC is required to give notice to the water carrier and other interested persons of the hearing which must be held when the PSC suspends the operation of a tariff and inquires into rates and regulations. MCL 460.201; MSA 22.91. *Cummings v Wayne Co*, 210 Mich App 249, 253; 533 NW2d 13 (1995) (due process in civil cases generally requires notice of the nature of the proceedings, an opportunity to be heard in a meaningful time and manner, and an impartial decisionmaker).

Further, due process requires that the delegation of legislative tasks to an administrative agency be accompanied by the existence of standards as reasonably precise as the subject matter requires or permits. *Kopietz v Clarkston Zoning Bd of Appeals*, 211 Mich App 666, 670-671; 535 NW2d 910 (1995). In *Attorney General v MPSC*, 161 Mich App 506; 411 NW2d 469 (1987), the Attorney General contended that a statute allowing the PSC to incorporate a gas cost recovery clause was unconstitutional because the statute provided no standard to guide the PSC in the exercise of its discretion regarding when a gas cost recovery clause should be approved. This Court disagreed, ruling that the gas cost recovery statute as a whole met the requirement that it provide standards as reasonably precise as the subject matter required or permitted. See *id.*, pp. 510-111.

Likewise, reading the Carriers by Water Act as a whole, it meets the requirement that it provide standards as reasonably precise as the subject matter requires or permits. Section one of the act requires that there be a hearing and that notice must be given to the carrier and to other interested persons. Section four of the act also requires that the carrier shall be entitled to reasonable notice and an opportunity to be heard before any tariff shall be imposed. An order imposed by the PSC is entitled to judicial review under § 5 [MCL 460.205; MSA 22.95], and § 2 [MCL 460.202; MSA 22.92] limits examination by the PSC to books, accounts,

records, and papers. Further, the PSC has a long history of rate regulation of water carriers, motor carriers, and utilities. Accordingly, the Carriers by Water Act provides standards as reasonably precise as the subject matter requires or permits.

Therefore, there is no due process violation in this case.

**Affirmed.**