DETROIT EDISON COMPANY v PUBLIC SERVICE COMMISSION

Docket No. 247930. Submitted November 10, 2004, at Lansing. Decided
     November 23, 2004, at 9:25 a.m.

   Detroit Edison Company (Edison) petitioned the Public Service
   Commission (PSC) for the recovery of implementation costs asso-
   ciated with a 2001 retail open access (ROA) program authorized by
   2000 PA 141 and 142, the Customer Choice and Electricity
   Reliability Act, that allowed retail electric customers to buy
   electricity from alternative suppliers. The PSC conditionally
   granted Edison's recovery of over $23 million subject to further
   review of the prudence of the costs. The PSC also decided that
   Edison could recover those costs only after a current rate freeze,
   that the 10.01 percent carrying cost requested by Edison was
   excessive and should be only seven percent, and that it need not
   consider carrying charges associated with Edison's 2000 imple-
   mentation costs. Edison appealed.

   The Court of Appeals held:

   1. As in cases reported after the PSC order in this case, i.e.,
   Detroit Edison Co v Pub Service Comm, 261 Mich App 448 (2004),
   and Consumers Energy Co v Pub Service Comm, 261 Mich App 455
   (2004), the PSC erred by failing to definitively determine an
   amount that Edison may recover for its 2001 ROA implementation
   costs. An approval of implementation costs made contingent on
   some future unknown facts is not a provision for full recovery of
   the costs as required by MCL 460.10a(1). The matter must be
   remanded to the PSC for a review of the prudence of the imple-
   mentation costs sought. The proceedings on remand shall conform
   to a schedule set by the Court of Appeals.

   2. The PSC did not abuse its discretion in selecting the seven
   percent interest rate for carrying charges because it has used that
   rate before and because Edison has neither cited any statute
   precluding the rate nor demonstrated an abuse of discretion on the
   part of the PSC.

   3. The PSC did not err by failing to order recovery of the
   carrying charges on Edison's 2000 ROA implementation costs that
   are attributable to 2001. The issue was made moot by the decision
   in Detroit Edison Co v Pub Service Comm, 261 Mich App 448

(2004), in which the Court of Appeals effectively directed the PSC to award Edison carrying charges for 2001 based on its 2000 ROA implementation costs.

Affirmed in part, reversed in part, and remanded to the PSC for further proceedings.

PUBLIC UTILITIES — PUBLIC SERVICE COMMISSION — CUSTOMER CHOICE AND ELECTRICITY RELIABILITY ACT — RECOVERY OF RETAIL OPEN ACCESS PROGRAM IMPLEMENTATION COSTS.

The Public Service Commission must definitively determine an amount recoverable for an electric utility's implementation costs of a retail open access program authorized under the Customer Choice and Electricity Reliability Act; the amount may not be made contingent on some future unknown facts and is subject to a review of the prudence of the implementation costs (2000 PA 141 and 142; MCL 460.10a[1] and [2]).

*Foster, Swift, Collins & Smith, P.C.* (by *William K. Fahey* and *Stephen J. Rhodes*), and *Jon P. Christinidis* and *Michael J. Solocinski, Jr.*, for the Detroit Edison Company.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *David A. Voges, Michael A. Nickerson*, and *Patricia S. Barone*, Assistant Attorneys General, for the Public Service Commission.

*Clark Hill PLC* (by *Robert A. W. Strong* and *Michael P. Calabrese*) for the Association of Businesses Advocating Tariff Equity.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Donald E. Erickson*, Assistant Attorney General, for the Attorney General.

Before: DONOFRIO, P.J., and MARKEY and FORT HOOD, JJ.

PER CURIAM. Appellant Detroit Edison Company (Edison) appeals as of right an opinion and order entered by

appellee Michigan Public Service Commission (PSC) regarding Edison's application for recovery of implementation costs associated with its retail open access program in 2001. We affirm in part, reverse in part, and remand for further proceedings.

## I. FACTUAL BACKGROUND

In 2000, the Legislature enacted the Customer Choice and Electricity Reliability Act, 2000 PA 141 and 142, which authorized the PSC to establish retail open access (ROA) programs, sometimes referred to as "retail wheeling" programs, under which retail electric customers may buy electricity from alternative suppliers, as opposed to an incumbent utility such as Edison. See generally *Detroit Edison Co v Pub Service Comm*, 261 Mich App 448, 449-450; 683 NW2d 679 (2004). Central to this case, this act included a provision, MCL 460.10a(1), directing the PSC to enter orders providing for "full recovery" of an incumbent utility's implementation costs and net stranded costs "as determined by the commission."

Edison filed an application to recover ROA implementation costs for 2001. In the order being appealed, the PSC conditionally approved Edison's recovery of $23,024,857 in ROA implementation costs subject to further review by the PSC of the prudence of those costs. The PSC also indicated that it intended to allow Edison to recover prudently incurred implementation costs "at the conclusion of the rate freeze" imposed on electric rates by MCL 460.10d. The PSC also rejected the 10.01 percent interest rate Edison sought on the carrying charges for its 2001 ROA implementation costs in favor of a seven percent interest rate. Additionally, the PSC rejected Edison's position that it should also

consider carrying charges associated with Edison's 2000 ROA implementation costs.

## II. STANDARD OF REVIEW

The scope of appellate review of PSC orders is narrow. *In re MCI Telecom Complaint*, 255 Mich App 361, 365; 661 NW2d 611 (2003). Pursuant to MCL 462.25, all rates, fares, charges, regulations, practices, and services prescribed by the PSC are deemed prima facie to be lawful and reasonable. *In re MCI, supra* at 365. Under MCL 462.26(8), a party challenging an order of the PSC has the burden of proving by clear and satisfactory evidence that the order is unlawful or unreasonable. *In re MCI, supra* at 365. We review questions of statutory interpretation, such as whether a PSC order is lawful, de novo as questions of law. *In re Michigan Cable Telecom Ass'n Complaint*, 239 Mich App 686, 690; 609 NW2d 854 (2000). But we give great weight to any reasonable construction by the PSC of a regulatory scheme that it is empowered to administer. *Champion's Auto Ferry, Inc v Pub Service Comm*, 231 Mich App 699, 707-708; 588 NW2d 153 (1998). A PSC order is unreasonable if the evidence does not support it. *In re MCI, supra* at 365. A final order of the PSC must "be supported by competent, material and substantial evidence on the whole record." Const 1963, art 6, § 28; *In re Michigan Cable, supra* at 690.

## III. CONDITIONAL RECOVERY OF 2001 ROA IMPLEMENTATION COSTS

Edison first challenges the PSC's decision to provide only conditional approval for an amount that Edison may recover for its 2001 ROA implementation costs rather than making an ultimate determination of that amount. This Court's prior opinions in *Detroit Edison,*

supra at 448, and *Consumers Energy Co v Pub Service Comm,* 261 Mich App 455; 683 NW2d 188 (2004),[1] which were decided after the filing of the parties' briefs on appeal in the present case, resolve this matter and require a holding that the PSC erred by failing to definitively determine an amount that Edison may recover for its 2001 ROA implementation costs.

Paralleling its action in the present case, the PSC in *Detroit Edison* conditionally approved deferred recovery of implementation costs that Edison incurred in 2000 to establish the ROA program subject to Edison's success in implementing the program. *Detroit Edison, supra* at 449, 451. The PSC also concluded, as it did here, that MCL 460.10d provides that the implementation costs be recovered at the end of the rate freeze it mandated. *Id.* at 451. Likewise, in *Consumers Energy,* the PSC conditionally approved the implementation costs Consumers Energy Company incurred in establishing an ROA program, but deferred recovery of "prudently incurred implementation costs" until the end of the rate freeze imposed by MCL 460.10d. The implementation costs could then be adjusted after further review. *Consumers Energy, supra* at 456-457.

In both *Detroit Edison* and *Consumers Energy,* this Court concluded that the PSC could not so delay its decision regarding recovery of implementation costs. In *Detroit Edison,* the panel stated that it did not "believe the Legislature intended such an indefinite deferral when it required [in MCL 460.10a(1)] that orders be issued by January 1, 2002," and that the PSC's decision did not provide sufficient information to allow this Court to perform its task of judicial review. *Detroit Edison, supra* at 452-453. Further, in *Consumers En-*

---

[1] Notably, both these opinions were released on the same date and decided by the same panel.

*ergy*, this Court stated that an approval of implementation costs "made contingent on future unknown facts that may indeed eradicate the initial approval is not a provision for full recovery." *Consumers Energy, supra* at 460. Nevertheless, the *Consumers Energy* panel rejected as "inconsistent with legislative intent" the PSC's indication at oral argument in that case that it intended to defer a determination on the implementation costs that were the subject of that case until the rate freeze imposed by MCL 460.10d(2) had expired and similarly rejected the PSC's position that it had the authority to defer determination of implementation costs "virtually indefinitely." *Consumers Energy, supra* at 460. *Detroit Edison* and *Consumers Energy* patently require us to conclude that the PSC erred and acted unlawfully in the present case when it declined to calculate Edison's 2001 ROA implementation costs until after the rate freeze ended, by which time the implementation costs claimed could be adjusted on the basis of subsequent events such as the future success of the ROA program. Thus, we must reverse the PSC order at issue because it does not set forth a precise amount to which Edison was entitled as a full recovery of its 2001 ROA implementation costs. Consequently, we must remand this case to the PSC for further proceedings.[2]

In both *Detroit Edison* and *Consumers Energy*, this Court, seeking to "ensure that the Legislature's intent, expressed in MCL 460.10a(1), is not frustrated by endless delays," remanded the cases for further proceedings with specific requirements and schedules for the proceedings on remand. *Detroit Edison, supra* at 453-454; *Consumers Energy, supra* at 460-461. Like-

---

[2] In light of this conclusion, we need not reach Edison's constitutional arguments or its retroactive ratemaking argument.

wise, we provide specific direction for the proceedings on remand in this case. Specifically, the PSC is to convene a hearing no more than ninety days from the date of this opinion and issue an order providing for a full recovery of Edison's 2001 ROA implementation costs and containing a comprehensive and detailed analysis supporting its conclusions and findings no more than sixty days after the conclusion of that hearing. Also, the PSC shall request from Edison all the data the PSC will need to conduct a hearing and prudency review within thirty days from the date of this opinion. Edison will provide all requested information to the PSC within thirty days of receipt of the request (and any other relevant information it believes to be germane to its 2001 ROA implementation costs). Further, the PSC and Edison may supplement their respective request for and submission of data, as is reasonable during the course of the hearing. The PSC and Edison may stipulate extensions of time in which to request and supply data, conduct the hearing, and issue an order, provided that, absent exigent circumstances, there be no more than one adjournment of any date and for no longer than thirty days.[3]

We disagree with those aspects of Edison's arguments that suggest no need exists for a further evidentiary hearing on remand relative to the appropriateness

---

[3] We consider it apparent that the time lines and procedures directed to be followed on remand in *Detroit Edison* and *Consumers Energy* did not establish a binding rule of law for future cases; rather they constituted an exercise of this Court's broad discretion in fashioning a remedy, MCR 7.216(A). Nevertheless, we have essentially followed the time lines and procedures from those cases because they appear reasonable to us with the modification of allowing an additional adjournment of a date or extension of time in exigent circumstances. For example, we would not wish to preclude a second adjournment of the hearing on remand if warranted by the illness of a critical participant or a similar exceptional circumstance.

of the implementation costs it incurred. The PSC's review of the order being appealed did not encompass consideration of the prudence of the 2001 ROA implementation costs Edison claimed. *Detroit Edison* and *Consumers Energy* were remanded for a prudency review. Further, the language in *Detroit Edison* indicating that the PSC's consideration of a request for approval of implementation costs for an ROA program should be made "in light of the knowledge that was available at the time the expenditures were made," *Detroit Edison, supra* at 452, and reflects that the PSC may properly consider the prudence of those ROA implementation costs a utility incurs. Thus, we reject Edison's apparent position that remand for a prudency review is unnecessary.

We further note that neither *Detroit Edison* nor *Consumers Energy* addressed how or when a utility is entitled to actually recover its ROA implementation costs after those costs are determined, particularly in light of the rate freeze imposed by MCL 460.10d. We can only surmise that the panel deciding those cases must have concluded that this matter was properly left to the PSC to first consider on remand. We agree with that implicit conclusion in *Detroit Edison* and *Consumers Power* given the strong deference afforded to the PSC in this area.

Although the PSC argued that Edison lacks standing because it was not aggrieved by the PSC's failure to make a final decision on Edison's 2001 ROA implementation costs, *Detroit Edison* and *Consumers Energy* did not specifically address the issue of a utility's standing to challenge a decision by the PSC to effectively delay indefinitely such a determination. However, we conclude that Edison has standing to challenge such inappropriate delay on appeal. To have standing, (1) a party

must allege an injury in fact that involves a concrete and particularized invasion of its legal rights, (2) there must be a causal connection between the alleged injury and the conduct challenged by the party, and (3) it must be likely that the injury will be redressed by a favorable decision. *Nat'l Wildlife Federation v Cleveland Cliffs Iron Co,* 471 Mich 608, 628-629; 684 NW2d 800 (2004). We consider it apparent that Edison has a concrete interest in having decided in a relatively timely manner the amount of 2001 ROA implementation costs it is entitled to recover. For example, the PSC's final determination of the costs that Edison will be entitled to recover will be a company asset, affecting Edison's position with potential creditors and shareholders. Accordingly, we conclude that the PSC's improperly deferring a determination of Edison's 2001 ROA implementation costs constituted a concrete and particularized harm to Edison with an obvious causal connection between the PSC's wrongful conduct and harm to Edison. Further, our decision requiring the PSC to determine Edison's 2001 ROA implementation costs provides effective redress for this injury. Thus, Edison has standing to challenge the PSC's inappropriate deferral of a determination of its 2001 ROA implementation costs.

### IV. INTEREST RATE ON CARRYING CHARGES

Edison next argues that the PSC improperly provided for an interest rate of seven percent, rather than 10.01 percent, for the carrying charges Edison would eventually recover for its 2001 ROA implementation costs. We disagree.

Although neither party has squarely addressed this issue on appeal, we believe the initial question in reviewing this issue is whether we should treat the

PSC's selection of an interest rate in this context as a factual determination or a "legislative function." The distinction is important; we review a factual determination by the PSC for whether it is supported by competent, material, and substantial evidence on the whole record, *In re Michigan Cable, supra* at 690. In contrast, this substantial evidence test is inapplicable to a review of the PSC's exercise of a legislative function. "[W]hen the PSC exercises its 'legislative' ratemaking authority, [we] accord[] deference to the administrative expertise . . . of the PSC absent some breach of a constitutional standard or statutory mandate or limitation." *Consumers Power Co v Pub Service Comm*, 226 Mich App 12, 21; 572 NW2d 222 (1997). The parties have not cited, nor have we found, any controlling Michigan authority specifically addressing whether the interest rate to be used in determining carrying charges to be awarded as part of a utility's "full recovery" of ROA implementation costs under MCL 460.10a(1) should be reviewed as a factual determination under the substantial evidence test or as the exercise of a legislative function for which we accord deference to the PSC.

Nevertheless, we conclude that it is more reasonable to deem the determination of the appropriate interest rate for such carrying charges a legislative function. It is plain that an award of interest, or "carrying charges" in utility regulation jargon, is necessary to allow a utility to "fully" recover its ROA implementation costs because an aspect of the costs a utility actually incurs is that loss the utility experiences by the unavailability of those funds spent in implementing an ROA program rather than securing investment or other financial return. But, at the same time, there is no reasonable basis for concluding that there is only one fair interest rate with which to compensate a utility for the inability

to use its funds, because it is impossible to know with any degree of certainty what return the utility would have gained on those funds if they had been invested in some way, even recapitalization, as opposed to being used to implement an ROA program. Accordingly, we conclude that determining the interest rate to be awarded as part of a utility's full recovery of ROA implementation costs is highly akin to ratemaking in that it does not involve determining a factual matter, but involves instead an effort to provide a fair return that is neither too high nor too low in a context in which no one interest rate can reasonably be characterized as the only fair rate. Thus, we hold that the basic principles attendant to review of the PSC's exercise of ratemaking authority also apply to reviewing the PSC's selection of an interest rate for carrying charges attributable to recovery of ROA implementation costs: both are exercises of legislative functions.[4]

In exercising its legislative ratemaking function, "[t]he PSC is not bound to follow any particular method or formula when it determines rates." *Detroit Edison Co v Pub Service Comm*, 221 Mich App 370, 373; 562 NW2d 224 (1997). To establish that a PSC order is unlawful with regard to a legislative function, a party must show that the PSC failed to follow a mandatory statute or abused its discretion in exercising its judgment. *In re MCI Telecom Complaint*, 460 Mich 396, 427; 596 NW2d 164 (1999). Edison has not cited any statute precluding a rate of seven percent interest in the present context. Further, Edison has not shown that the

---

[4] We emphasize that this particular holding is limited to the determination of a proper interest rate for carrying charges awarded as part of a utility's recovery of implementation costs under MCL 460.10a(1). It is apparent that other aspects of such a recovery would be based on historical facts. Application of the substantial evidence test to such factual findings would seem to be appropriate.

PSC's selection of a seven percent interest rate in the present context constituted an abuse of discretion. The record reflects that the PSC used a seven percent interest rate in prior implementation costs cases, indicating that there is no reason for concern that the PSC is acting arbitrarily by using different interest rates in different such cases occurring in the same time frame. While Edison essentially maintained below that a 10.01 percent interest rate was appropriate because the PSC ordered that rate in 1994, it is common knowledge that prevailing interest rates vary with market conditions and what was an appropriate interest rate in 1994 is not controlling with regard to what is appropriate at the time of a later decision, especially when the order being appealed was issued in 2003, or at present.[5] Thus, we conclude that Edison has not established that the PSC abused its discretion by allowing a seven percent interest rate on the carrying charges for Edison's 2001 ROA implementation costs.

Also, Edison cursorily asserts that the PSC's use of a seven percent interest rate constitutes an unconstitutional taking of its property; however, Edison has waived this argument by inadequately briefing it. *Blazer Foods, Inc v Restaurant Properties, Inc*, 259 Mich App 241, 253; 673 NW2d 805 (2003). Nonetheless, although we need not decide the point, it seems to us that the only plausible basis for a claim of an unconstitutional taking is that the seven percent interest rate did not fairly compensate Edison for the lost use of its funds. But, for the reasons discussed above, Edison has not established that the seven percent interest rate was unfair. Accordingly, we affirm the PSC order providing a seven percent interest rate for the relevant carrying charges.

---

[5] Indeed, today, a seven percent interest rate is a good rate of return for long-term investments.

V. 2000 ROA IMPLEMENTATION COSTS

Finally, Edison argues that the PSC erred by failing to order recovery of the carrying charges on its 2000 ROA implementation costs that are attributable to 2001. We conclude that this issue is moot in light of this Court's decision in *Detroit Edison, supra,* 261 Mich App 448. As discussed above, this Court remanded that *Detroit Edison* case to the PSC to conduct proceedings that would result in an order providing "for full recovery of Edison's implementation costs . . . ." *Id.* at 453. Certainly, such an order by the PSC should include carrying charges for Edison's 2000 ROA implementation costs. Thus, by its opinion in *Detroit Edison,* this Court has already effectively directed the PSC to award Edison carrying charges for 2001 based on its 2000 ROA implementation costs. An order to the same effect in the present case would essentially be redundant. Because Edison has already effectively obtained the relief it seeks with regard to this issue and this Court cannot provide further meaningful relief regarding the matter, the issue is moot. See, e.g., *Eller v Metro Industrial Contracting, Inc,* 261 Mich App 569, 571; 683 NW2d 242 (2004) ("An issue is moot and should not be reached if a court can no longer fashion a remedy.").

We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.